IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ADRIANNA MORALES AS NEXT FRIEND OF A MINOR D.J.M., LAVON BETH MEYER and LEE ALLEN MEYER INDIVIDUALLY and AS REPRESENTATIVE OF THE ESTATE OF LYNDON DEAN MEYER | § | |
| | § | CIVIL NO. |
| | § | (JURY DEMANDED) |
| VS. | § | |
| | § | |
| PENSKE LOGISTICS, L.L.C., PENSKE TRANSPORTATION MANAGEMENT, L.L.C. and LIBERTY LANE, L.L.C. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

COME NOW Plaintiffs, ADRIANNA MORALES AS NEXT FRIEND OF A MINOR D.J.M., LAVON BETH MEYER and LEE ALLEN MEYER INDIVIDUALLY and AS REPRESENTATIVE OF THE ESTATE OF LYNDON DEAN MEYER, hereinafter called Plaintiffs, complaining of PENSKE LOGISTICS, L.L.C., PENSKE TRANSPORTATION MANAGEMENT, L.L.C., and LIBERTY LANE, L.L.C., hereinafter called Defendants. Plaintiffs are filing this Original Complaint simultaneously with Plaintiffs' (Motion for Leave to file and) Second Amended Complaint in Cause Number 2:19CV-00094 pending in the United States District Court for the Southern District of Texas Corpus Christi Division alleging identical causes of action against Defendants as in this Original Complaint. Plaintiffs are filing both complaints in an abundance of caution to ensure that their causes of action against Defendants are timely filed. Plaintiffs plan to subsequently ask for both this new action and the existing action in Cause Number

2:19CV-00094 to be consolidated after Defendants have been cited, served and made an appearance. Plaintiffs would respectfully show the Court in this Original Complaint the following:

1.00 **PARTIES**

1.01 Plaintiffs are residents of Goliad County, Texas.

1.02 Defendant PENSKE LOGISTICS LLC., d/b/a TRANSFREIGHT (hereinafter individually referred to as "PENSKE LOGISTICS") is a limited liability company organized under the laws of the state of Delaware with its principal place of business and home office located at 2675 Morgantown Road, Reading, PA 19607. PENSKE LOGISTICS is a federally authorized motor carrier operating under USDOT #268015. Plaintiff does not have access to the information necessary to affirmatively plead upon personal knowledge which state(s) PENSKE LOGISTICS is a citizen of. Based on information and belief obtained from conducting a reasonable investigation by examining the secretary of state websites for the states of Texas, Pennsylvania, and Delaware, conducting case law research on cases in which PENSKE LOGISTICS[1] was a named party (which indicate that PENSKE LOGISTICS is only a citizen of Delaware, Maryland, Michigan, Pennsylvania, and Tennessee), and examining other publicly available information about PENSKE LOGISTICS on the internet (all of which provided no indication that PENSKE LOGISTICS is a citizen of Texas), Plaintiff in good faith pleads that PENSKE LOGISTICS is an limited liability company that does not have any member that is a citizen of Texas. Accordingly, PENSKE LOGISTICS is not a citizen of Texas. PENSKE LOGISTICS may be served with citation by mailing a true copy of the citation with a copy of the Complaint attached thereto by certified mail, return receipt requested, to its Registered Agent in the state of Texas, Corporation

[1] "Based on the citizenship of its various members as detailed in the Joint Attorney Certification, Penske is a citizen of the states of Delaware, Maryland, Michigan, Pennsylvania, and Tennessee." *Mangini v. Penske Logistics*, No. 11-0270 (NLH/KMW), 2012 U.S. Dist. LEXIS 141591, at *2 (D.N.J. Sep. 28, 2012).

Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

1.03 Defendant PENSKE TRANSPORTATION MANAGEMENT, L.L.C., (hereinafter individually referred to as "PENSKE MANAGEMENT") is a limited liability company organized under the laws of the state of Delaware with its principal place of business and home office located at 2675 Morgantown Road, Reading, PA 19607. PENSKE MANAGEMENT is a federally authorized broker operating under USDOT #2353572. PENSKE MANAGEMENT has one member: PENSKE LOGISTICS. Plaintiff does not have access to the information necessary to affirmatively plead upon personal knowledge which state(s) PENSKE MANAGEMENT is a citizen of. Based on the same information and belief obtained from conducting a reasonable investigation into the citizenship of PENSKE LOGISTICS, as discussed in Paragraph 1.07 above, Plaintiff in good faith pleads that PENSKE MANAGEMENT is a limited liability company that does not have any member which is a citizen of Texas. Accordingly, PENSKE MANAGEMENT is not a citizen of Texas. PENSKE MANAGEMENT may be served with citation by mailing a true copy of the citation with a copy of the Complaint attached thereto by certified mail, return receipt requested, to its Registered Agent in the state of Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

1.04 Defendant LIBERTY LANE LLC., (hereinafter individually referred to as "LIBERTY LANE") is a limited liability company organized under the laws of the state of North Carolina with its principal place of business and home office located at 27 Drakes Meadow Ln., Arden, North Carolina 28704. LIBERTY LANE is a federally authorized motor carrier operating under USDOT #2159555. LIBERTY LANE has one member: Aleksandr Lastivka, who is a citizen of North Carolina domiciled at 27 Drakes Meadow Ln., Arden, North Carolina 28704.

Accordingly, LIBERTY LANE is a citizen of North Carolina and only North Carolina. LIBERTY LANE may be served with citation by mailing a true copy of the citation with a copy of the Complaint attached thereto by certified mail, return receipt requested, to its Process Agent with All American Agents of Process, Jeffrey Fultz, at 10343 Sam Houston Park Dr., #210, Houston, TX 77064-4656.

2.00 **JURISDICTION AND VENUE**

2.01 The amount in controversy, exclusive of interest and costs, exceeds the minimum jurisdictional limits of this court.

2.02 Jurisdiction is proper in this court as there is diversity of citizenship between the parties as provided by 28 U.S.C. §1332(a).

2.03 The Court has personal jurisdiction over the Defendants because they purposefully availed themselves of the rights and privileges of Texas law. On information and belief, PENSKE MANAGEMENT selected and hired LIBERTY LANE, a motor carrier, to provide for the transportation of goods, via a commercial motor vehicle, on the public highways of Texas for pecuniary gain. In the alternative, on information and belief, PENSKE MANAGEMENT selected and hired Liberty Commercial, LLC (hereafter sometimes referred to as "LIBERTY" and a Defendant in Cause Number 2:19CV-00094), a transportation broker, to select and hire a motor carrier to provide for the transportation of goods, via a commercial motor vehicle, on the public highways of Texas for pecuniary gain. On information and belief, LIBERTY LANE and/or PENSKE LOGISTICS agreed to undertake to perform transportation services in Texas for pecuniary gain. This lawsuit arises out of Defendants' contacts and business conducted within the state of Texas, inasmuch as this lawsuit arises out of the motor vehicle collision in the state of Texas involving LYNDON DEAN MEYER, deceased, and the tractor-trailer owned by OK TRANSPORT (a California motor carrier and Defendant in Cause Number 2:19CV-00094) and

driven by SATNAM SINGH LEHAL (a Defendant in Cause Number 2:19CV-00094), which LIBERTY hired and/or selected to provide for the transportation of the goods that SATNAM SINGH LEHAL was in route to pick up over the public highways in the state of Texas at the time of the crash. On information and belief, at the time of the crash, PENSKE LOGISTICS and/or LIBERTY LANE was/were the statutory employer(s) of SATNAM SINGH LEHAL, and were therefore operating as motor carriers in Texas at the time of the crash, as set forth in more detail in Section 3.00 below.

2.04 Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district. LYNDON DEAN MEYER, deceased, and Defendant, SATNAM SINGH LEHAL, were involved in an automobile crash within this district.

## 3.00 **RESPONDEAT SUPERIOR**

3.01 Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendant's agents, officers, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of said Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

3.02 The following is pleaded on information and belief: Aident, PLC is one of the largest automotive seat suppliers in the world with its United States operation based in Michigan. Aident supplies automobile seats to Tesla. To facilitate supplying its product to Tesla, Aident has a facility in Newark, California, which is close to Tesla's facility in Freemont, California (both generally in the greater "Bay Area" surrounding San Francisco). Aident has a relationship with a company in Mexico that manufactures (either in whole or in part) the automobile seats that Aident supplies Tesla. The seats are transported across the U.S. border to Laredo, Texas, to await

transport to Aident's facility in Newark, California. Thus, Aident has a constant need for eighteen-wheelers to transport its products from Laredo, Texas to Newark, California (and sometimes back). As a result, Aident contracted with PENSKE LOGISTICS to transport shipments of goods (automobile seats) from Laredo to Newark (and sometimes back). With respect to the shipment that SATNAM SINGH LEHAL was dispatched to and in route to pick up at the time of the crash giving rise to this case, PENSKE LOGISTICS agreed and undertook to transport Aident's goods from Laredo, Texas to Newark, California as a "motor carrier" under its federal motor carrier operating authority. Pursuant to 49 U.S.C. 13901(c) (commonly referred to as "MAP-21"), once PENSKE LOGISTICS agreed and undertook to transport Aident's goods from Laredo, Texas to Newark, California as a "motor carrier", it could not later change its designation as the "motor carrier" responsible for the transportation services in interstate commerce of Aident's goods. The commercial motor vehicle that SATNAM SINGH LEHAL was operating at the time of this crash was not owned by PENSKE LOGISTICS. Pursuant to 49 C.F.R. Chapter 376, PENSKE LOGISTICS could only provide such transportation services with equipment that it did not own pursuant to a written lease that gave PENSKE LOGISTICS responsibility for and control over the equipment, which made PENSKE LOGISTICS the statutory employer of the SATNAM SINGH LEHAL at the time of this crash. And pursuant to 49 C.F.R. section 390.5, the driver was an "employee," and PENSKE LOGISTICS was his "employer," even if the driver was denominated an "independent contractor" or common law employee of OK TRANSPORT. Accordingly, PENSKE LOGISTICS is vicariously liable for all negligent acts committed by its statutory employee, SATNAM SINGH LEHAL, in the course and scope of his operating the 18-wheeler after he was dispatched and in route to pick up the goods to be hauled from Laredo, TX to Newark, CA at the time of this crash and for the resulting serious injuries to Plaintiffs and damages suffered by Plaintiffs.

3.03 In the alternative, LIBERTY LANE agreed and undertook to transport the automobile seats from Laredo, Texas to Newark, California as a motor carrier under its federal motor carrier operating authority. Pursuant to 49 U.S.C. 13901(c) (commonly referred to as "MAP-21"), once LIBERTY LANE agreed and undertook to transport Aident's goods from Laredo, Texas to Newark, California as a "motor carrier", it could not later change its designation as the "motor carrier" responsible for the transportation services in interstate commerce of Aident's goods. The commercial motor vehicle that SATNAM SINGH LEHAL was operating at the time of this crash was not owned by LIBERTY LANE. Pursuant to 49 C.F.R. Chapter 376, LIBERTY LANE could only provide such transportation services with equipment that it did not own pursuant to a written lease that gave LIBERTY LANE responsibility for and control over the equipment, which made LIBERTY LANE the statutory employer of the SATNAM SINGH LEHAL at the time of this crash. And pursuant to 49 C.F.R. section 390.5, the driver was an "employee," and LIBERTY LANE was his "employer," even if the driver was denominated an "independent contractor" or common law employee of OK TRANSPORT. Accordingly, LIBERTY LANE is vicariously liable for all negligent acts committed by its statutory employee, SATNAM SINGH LEHAL**,** in the course and scope of his operating the 18-wheeler after he was dispatched and in route to pick up the goods to be hauled from Laredo, TX to Newark, CA at the time of this crash and for the resulting serious injuries to Plaintiffs and damages suffered by Plaintiffs.

3.04 Because PENSKE LOGISTICS and/or LIBERTY LANE agreed to be responsible for the transportation of the goods in interstate commerce under their federal motor carrier operating authority, and therefore qualified as "motor carriers" and "employers" of SATNAM SINGH LEHAL pursuant to federal statutes and the Federal Motor Carrier Safety Regulations, they are vicariously liable for the negligence of the driver, SATNAM SINGH LEHAL. SATNAM SINGH LEHAL was acting in the course and scope of this statutory employment at the time of the crash.

As a result, PENSKE LOGISTICS and/or LIBERTY LANE is/are vicariously liable for the negligence of SATNAM SINGH LEHAL that was a proximate cause of the collision and the Plaintiffs' injuries and damages.

## 4.00 STATEMENT OF FACTS AND CAUSES OF ACTION

4.01 Plaintiffs bring this suit to recover for damages sustained by Plaintiffs as a result of the personal injuries to and death of LYNDON DEAN MEYER resulting from a collision on December 26, 2018, in Bee County, Texas with a commercial motor vehicle 18-wheeler tractor-trailer owned by OK TRANSPORT and driven by SATNAM SINGH LEHAL. The collision was proximately caused by Defendants' negligence/negligence per se. At such time and place, the 18-wheeler owned by OK TRANSPORT and driven by SATNAM SINGH LEHAL crossed over into the oncoming lane of traffic on State Highway 202 and crashed into the pickup driven by LYNDON DEAN MEYER, deceased. As a result of the incident, LYNDON DEAN MEYER, deceased, sustained personal injuries, resulting in his death.

4.02 The injuries and damages suffered by Plaintiffs were directly and proximately caused by the negligence and/or negligence per se of the Defendants, individually and acting by and through their servants, agents, and employees, as set out herein. At the time and place in question, SATNAM SINGH LEHAL was acting as the agent, servant, and employee of OK TRANSPORT, and was within the scope and course of his employment for OK TRANSPORT. Further, on information and belief, at the time of the collision, SATNAM SINGH LEHAL was the statutory employee of PENSKE LOGISTICS and/or LIBERTY LANE, because one or both of these Defendants agreed and undertook to transport the goods under its/their federal motor carrier operating authority and to be responsible for the transportation of the goods in interstate commerce, making it/them a "motor carrier" and "employer" under federal statutes and regulations, all as set forth in more detail in Paragraphs 3.02-3.04, above. Defendants, acting through their agents,

servants and employees, in the course and scope of their employment, were guilty of acts of negligence and/or negligence per se, each of which jointly and severally proximately caused the injuries to and death of LYNDON DEAN MEYER and the damages suffered by Plaintiffs.

4.03 The collision and the resulting serious injuries to and death of LYNDON DEAN MEYER and damages to Plaintiffs made the basis of this suit also resulted from the negligence and/or negligence per se of the OK TRANSPORT, acting by and through its servants, agents, and employees, in negligently hiring SATNAM SINGH LEHAL and in knowingly entrusting its tractor trailer to a reckless or otherwise incompetent driver as they knew or should have known that SATNAM SINGH LEHAL was reckless and otherwise incompetent. Plaintiffs would also show SATNAM SINGH LEHAL was negligent in driving the vehicle when he knew or should have known he was medically impaired, and that OK TRANSPORT was negligent in allowing SATNAM SINGH LEHAL to drive when OK TRANSPORT knew or should have known that SATNAM SINGH LEHAL was medically impaired. Plaintiffs would show the medical impairment was a proximate cause of the crash.

4.04 The collision and the resulting serious injuries to and death of LYNDON DEAN MEYER and damages to Plaintiffs made the basis of this suit further resulted from the negligence of Defendant, LIBERTY acting by and through its servants, agents, and employees, in hiring OK TRANSPORT to provide for the transportation of goods originating in Laredo, Texas, with a final destination of Newark, California. LIBERTY knew or should have known that OK TRANSPORT was incompetent in operating its commercial motor vehicles on the public roadways among the motoring public. LIBERTY failed to exercise ordinary care to investigate OK TRANSPORT and ascertain OK TRANSPORT'S competence and qualifications in its commercial vehicle operation. Had LIBERTY exercised ordinary care in investigating and selecting OK TRANSPORT, it would have learned that OK TRANSPORT was not a competent motor carrier to safely transport goods

on a public highway, including that OK TRANSPORT was a non-rated motor carrier that had publicly available FMCSA BASIC (Behavior Analysis & Safety Improvement Categories) scores indicating both a long term and recent history of unsafe operation, including "Unsafe Driving". A reasonably prudent transportation property broker would have learned prior to selecting OK TRANSPORT that it had received a letter from the FMCSA dated August 10, 2018 (approximately four and a half months prior to this crash) formally warning OK TRANSPORT of its safety performance and compliance problems in the area of "Unsafe Driving" and that OK TRANSPORT did not have sufficient safety management controls to properly train and supervise its drivers, including SATNAM SINGH LEHAL. Therefore, a reasonably prudent transportation property broker would not have hired OK TRANSPORT to transport property in interstate commerce, including the load that SATNAM SINGH LEHAL was in route to pick up at the time of the collision.

Plaintiffs were damaged as a result of LIBERTY'S incompetence, recklessness and negligence in investigating OK TRANSPORT'S competence to transport goods in a commercial motor vehicle on the public roadways and in selecting OK TRANSPORT to transport goods in a commercial motor vehicle on the public roadways, because had LIBERTY exercised ordinary care in investigating OK TRANSPORT, it would have learned that OK TRANSPORT was not competent to safely transport goods in a commercial motor vehicle on the public roadways. The negligence of LIBERTY in investigating, selecting and hiring OK TRANSPORT to operate the commercial motor vehicle involved in this crash was a proximate cause of the collision in which Lyndon Dean Meyer was killed.

4.05 On information and belief, the collision and the resulting serious injuries to and death of LYNDON DEAN MEYER and damages to Plaintiffs made the basis of this suit further resulted from the negligence of Defendant, PENSKE MANAGEMENT acting by and through its

servants, agents, and employees, in hiring LIBERTY LANE to provide for the transportation of goods originating in Laredo, Texas, with a final destination of Newark, California. PENSKE MANAGEMENT knew or should have known that LIBERTY LANE was incompetent in operating its commercial motor vehicles on the public roadways among the motoring public. PENSKE MANAGEMENT failed to exercise ordinary care to investigate LIBERTY LANE and ascertain LIBERTY LANE'S competence and qualifications in its commercial vehicle operation. Specifically, PENSKE MANAGEMENT did not require LIBERTY LANE to provide it with any information or documentation regarding LIBERTY LANE'S operation as a motor carrier, its policies, procedures or practices (including any safety management controls) to ensure that its transportation services were provided by safe and competent drivers. PENSKE MANAGEMENT did not examine or ignored relevant safety indicators — including BASIC scores, Out-of-Service violations, and driver preventable crash history — available on the FMCSA's public website regarding LIBERTY LANE. Further, PENSKE MANAGEMENT did not inquire into or require LIBERTY LANE to explain the facts and circumstances regarding why its BASIC scores indicated a history of unsafe operation or explain what LIBERTY LANE was doing to ensure safe operation in light of these unsafe BASIC scores. PENSKE MANAGEMENT did not inquire into or require LIBERTY LANE to explain the facts and circumstances regarding why its Out-of-Service rates[2] were higher than the national average when compared to those of other motor carriers after roadside enforcement inspections, or explain what LIBERTY LANE was doing to ensure safe operation in light of these higher-than-average Out-of-Service rates. Further, PENSKE MANAGEMENT never required LIBERTY to undergo any review of its qualifications or procedures subsequent to initially hiring LIBERTY. Had PENSKE MANAGEMENT exercised

[2] Out-of-Service violations are safety violations that are critical and pose an imminent threat to the motoring public, and therefore must be remedied before the commercial motor vehicle is placed back onto the public highways.

ordinary care in investigating and selecting LIBERTY LANE, it would have learned that LIBERTY LANE was not a competent motor carrier to safely transport goods on a public highway, including that LIBERTY LANE: (i) was a non-rated, single-unit motor carrier; (ii) had publicly available FMCSA BASIC scores indicating both a long term and recent history of unsafe operation, including "Unsafe Driving" and "Vehicle Maintenance"; (iii) had Out-of-Service rates higher than the national average after roadside enforcement inspections; and (iv) had only one driver for its operation and its only driver had previously caused a reportable crash that was deemed preventable. A reasonably prudent transportation property broker would have learned prior to selecting LIBERTY LANE that it did not have sufficient safety management controls to ensure that it had competent, safe drivers providing transportation under its operating authority, and therefore a reasonably prudent transportation property broker would not have hired LIBERTY LANE to transport property in interstate commerce, including the load that SATNAM SINGH LEHAL was in route to pick up at the time of the collision.

Plaintiffs were damaged as a result of PENSKE MANAGEMENT'S incompetence, recklessness and negligence in investigating LIBERTY LANE'S competence to transport goods in a commercial motor vehicle on the public roadways and in selecting LIBERTY LANE to transport goods in a commercial motor vehicle on the public roadways, because had PENSKE MANAGEMENT exercised ordinary care in investigating LIBERTY LANE, it would have learned that LIBERTY LANE was not competent to safely transport goods in a commercial motor vehicle on the public roadways. The negligence of PENSKE MANAGEMENT in investigating, selecting and hiring LIBERTY LANE to operate the commercial motor vehicle involved in this crash was a proximate cause of the collision in which Lyndon Dean Meyer was killed.

4.06 In the alternative to the facts alleged in Paragraph 4.05, above, on information and belief, the collision and the resulting serious injuries to and death of LYNDON DEAN MEYER

and damages to Plaintiffs made the basis of this suit further resulted from the negligence of Defendant, PENSKE MANAGEMENT acting by and through its servants, agents, and employees, in hiring LIBERTY as a transportation broker to select and hire a motor carrier to provide for the transportation of goods originating in Laredo, Texas, with a final destination of Newark, California. PENSKE MANAGEMENT knew or should have known that LIBERTY was reckless or incompetent in investigating, selecting and hiring motor carriers to operate commercial motor vehicles on the public roadways among the motoring public. PENSKE MANAGEMENT failed to exercise ordinary care to investigate LIBERTY and ascertain LIBERTY'S competence and qualifications as a transportation broker. Specifically, PENSKE MANAGEMENT did not require LIBERTY to provide it with any information or documentation regarding LIBERTY'S operation as a transportation broker, its policies, procedures or practices, or how it selects competent motor carriers. PENSKE MANAGEMENT did not inquire into or require LIBERTY to explain the facts and circumstances surrounding either the notice of threatened revocation of its operating authority in January 2018 and the actual involuntary revocation of its operating authority by federal authorities the following month in February 2018. Further, PENSKE MANAGEMENT never required LIBERTY to undergo any review of its qualifications or procedures subsequent to initially hiring LIBERTY. Had PENSKE MANAGEMENT exercised ordinary care in investigating and selecting LIBERTY, it would have learned that LIBERTY was not a competent transportation broker who could and would safely select a motor carrier to transport goods on a public highway, including that LIBERTY: (i) had no selection criteria to select a competent motor carrier other than to verify that a motor carrier had valid operating authority, minimum insurance levels and anything other than a "non-satisfactory" safety rating; (ii) did not consider a motor carrier's safety history (including BASIC scores), crash history, out-of-service rates compared to the national average of other motor carriers, or anything else that could indicate that a motor carrier is not

competent to safely operate in interstate commerce; and (iii) had a prior involuntary revocation of its operating authority in its operating history, indicating a "willful disregard to follow the rules"[3]

Plaintiffs were damaged as a result of PENSKE MANAGEMENT'S incompetence, recklessness and negligence in investigating LIBERTY'S competence to investigate, select and hire a motor carrier to transport goods in a commercial motor vehicle on the public roadways and in selecting LIBERTY to do so, because had PENSKE MANAGEMENT exercised ordinary care in investigating LIBERTY, it would have learned that LIBERTY was not competent to safely investigate, select and hire a competent motor carrier to transport goods in a commercial motor vehicle on the public roadways. The negligence of PENSKE MANAGEMENT in investigating, selecting and hiring LIBERTY as a transportation property broker was a proximate cause of the collision in which Lyndon Dean Meyer was killed.

4.07 The above-referenced acts and/or omissions of all of the Defendants, when viewed objectively from the standpoint of the Defendants at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others, and were of such a nature that Defendants had a subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including but not limited to the Plaintiffs. All of the Defendants should therefore be required to pay exemplary damages for which Plaintiffs now sue.

---

[3] The FMCSA exercises its authority to revoke operating authority when the broker or motor carrier has "engaged in conduct demonstrating willful disregard for applicable requirements. Inadvertent, isolated, or sporadic violations of applicable requirements generally will not result in revocation . . .." And in determining whether to revoke operating authority, FMCSA evaluates, among other things, the degree to which existing or past violations will affect, or have affected, the safety of operations, and whether adequate safety management controls exist. 77 FR 46147-03 at 46148.

5.00 **DAMAGES**

5.01 D.J.M., surviving child of LYNDON DEAN MEYER, has suffered pecuniary loss from the death of his father, including losses of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value that he would, in reasonable probability, have received from his father during his lifetime had he lived. He has suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness. He has suffered severe mental depression and anguish, grief and sorrow as a result of the death of his father, LYNDON DEAN MEYER, and is likely to continue to suffer for a long time in the future. For these losses, ADRIANNA MORALES, AS NEXT FRIEND OF D.J.M., seeks damages in a sum in excess of the minimum jurisdictional limits of this court.

D.J.M. has also suffered a loss of inheritance. For these losses, ADRIANNA MORALES, AS NEXT FRIEND OF D.J.M., seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

5.02 LAVON BETH MEYER AND LEE ALLEN MEYER, surviving parents of LYNDON DEAN MEYER, have suffered pecuniary loss from the death of their son, including losses of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value that they would, in reasonable probability, have received from their son during his lifetime had he lived. LAVON BETH MEYER AND LEE ALLEN MEYER have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness. They have suffered mental depression and anguish, grief, and sorrow as a result of the death of their son LYNDON DEAN MEYER and are likely to continue to suffer for a long time in the future.

5.03 LYNDON DEAN MEYER was wrongfully and negligently killed as hereinbefore described but did not die instantly. He experienced conscious pain and suffering, for which he would have been entitled to recover damages. The cause of action for damages of conscious pain and suffering prior to his death and for funeral and medical expenses survive, and on his death accrued to his heirs at law under section 71.021 of the Civil Practices and Remedies Code. This claim is brought by the Plaintiff LEE ALLEN MEYER as executor of the estate.

6.00 **PRAYER**

6.01 WHEREFORE, Plaintiffs pray that the Defendants be duly cited to appear and answer herein; that upon a final trial of this cause, Plaintiffs will recover:

1. Judgment against Defendants, jointly and severally, for Plaintiffs' damages as set forth above, in an amount in excess of the minimum jurisdictional limits of this Court;

2. Exemplary damages;

3. Interest on said judgment at the legal rate from date of judgment;

4. Prejudgment and post-judgment interest as allowed by law;

5. Costs of Court; and

6. Such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

**Cole, Cole, Easley & Sciba P.C.**
302 West Forrest Street
Victoria, Texas 77901
Phone: (361) 575-0551
Fax: (361) 575-0986
Email: jcole@colefirmservice.com

**THE PENN LAW FIRM**
Eric T. Penn
State Bar No. 24029767
Federal ID number: 437829
102 S. Ragsdale Street
P.O. Box 2079
Jacksonville, Texas 75766
Telephone: 903-586-7600
Facsimile: 903-586-7676
eric@thepennlawfirm.com

BY: ____/s/______________________________
ERIC T. PENN
State Bar No. 24029767
ATTORNEYS FOR THE PLAINTIFFS

**PLAINTIFFS HEREBY RESPECTFULLY DEMAND A TRIAL BY JURY.**